MDR

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Arthur L. Johnson, | ) | No. CV 1-08-1183-DCB |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dr. Ortiz, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Arthur L. Johnson, who is confined in the Pleasant Valley State Prison in Coalinga, California, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and then filed a First Amended Complaint (Doc. #5). This case was reassigned to the undersigned judge on November 25, 2008.

**I.    "Second Amended Complaint"**

On April 3, 2009, Plaintiff filed a Document (Doc. #10) which the Clerk of Court filed as a "Second Amended Complaint." Although the front page of the Document states that it is a "Complaint," Plaintiff also typed on the first page: "Request for Demand of Jury Trial pur. Fed.R.Civ.P. 38(b)." On the second page of the Document, Plaintiff states that he is "forwarding this front page of my complaint to identify, and clarify to this Honorable Court my exercise of the right to demand a Jury Trial pursuant to Federal Rules of Civil Procedure 38(b)." He further states that "[t]he contents of my complaint has not changed, thus this is only my effort to come into compliance with Federal rules of court when

JDDL

1  requesting for jury trial." The Court will direct the Clerk of Court to modify the docket entry
2  for Document #10 to reflect that it is a "Demand for Jury Trial."

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

## III.  First Amended Complaint

In his First Amended Complaint, Plaintiff sues the following Defendants: Doctors Ortiz, Salazar, Kushner, Elmer, Castillo, Vilaysane, Diep, and Doehring; and J. Does

1 through 20. Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs because they delayed medical treatment for his hyperthyroidism.

Plaintiff makes the following allegations:

1. On January 13, 2005, Plaintiff, after complaining about rapid heartbeat and weight loss, was seen by Defendant Ortiz. Defendant Ortiz ordered a blood test.

2. On February 1, 2005, Defendant Ortiz informed Plaintiff that the blood test showed a positive result for hypothyroidism, prescribed a thyroid medication, and scheduled a follow-up appointment in a month. On February 25th, Defendant Ortiz examined Plaintiff, who had twice complained about increased heart palpitations and other symptoms, and informed Plaintiff that he would be scheduled to see an "expert" who would perform a thyroid scan.

3. On April 26, 2005, Plaintiff was taken to a hospital to see an endocrinologist, but the endocrinologist was unable to conduct the thyroid scan because prison medical staff had not informed Plaintiff that he needed to stop his thyroid medication before the scan. The endocrinologist advised medical staff to stop Plaintiff's medication for six weeks.

4. On June 13, 2005, Plaintiff was told that he would be getting a thyroid scan. On June 15th, he was informed that the appointment had been cancelled. On June 17th, Plaintiff received "lab work" and was informed that he would be started back on this thyroid medication. On July 5th, Plaintiff was seen by Defendant Ortiz, who informed Plaintiff that the results of the June 17th lab work were not in Plaintiff's file.

5. On August 11, 2005, Plaintiff received a thyroid scan. On September 8th, Plaintiff complained of severe heart palpitations, was evaluated by a nurse, was informed that he potentially had cardiac arrhythmia, and was returned to his cell. On September 9th, Defendant Ortiz saw Plaintiff, informed Plaintiff that he needed to have his thyroid medication restarted, and stated that he would review the results of the thyroid scan and would see Plaintiff "soon."

6. On September 16, 2005, Defendant Salazar saw Plaintiff. Plaintiff informed Defendant Salazar of his health problems, but Defendant Salazar made no diagnosis and simply told Plaintiff to take care of himself. On October 12th, Plaintiff was supposed to meet with Defendant Salazar to review the thyroid scan report, but the report had been misplaced, and Plaintiff's appointment was rescheduled.

7. On December 12, 2005, Defendant Kushner reviewed the thyroid scan report with Plaintiff and informed Plaintiff that he needed Ablation therapy (Ablation) and that his heart palpitations and arrhythmia were caused by Plaintiff's hyperthyroidism.

- 3 -

8. On February 16, 2006, Defendant Elmer informed Plaintiff that his thyroid was abnormally large, his uptake was abnormal, and his palpitations were due to cardiac problems. Defendant Elmer informed Plaintiff that he would see an endocrinologist as soon as possible and requested a thyroid uptake test for the following week.

9. On March 3, 2006, an endocrinologist saw Plaintiff, informed Plaintiff that he needed immediate Ablation, and told Plaintiff that prison staff would have to "schedule the correct process so that Plaintiff could obtain the medication and correct treatment and follow up."

10. On March 16, 2006, Defendant Castillo met with Plaintiff. Plaintiff informed Defendant Castillo of his symptoms and informed Defendant Castillo that the endocrinologist had recommended Ablation. Defendant Castillo discontinued Plaintiff's thyroid medication and prescribed a different medication. He did not start Ablation.

11. On April 12, 2006, Defendant Castillo informed Plaintiff that Defendant Castillo was requesting a blood test and that Plaintiff would soon be receiving Ablation. The blood test was performed on May 2nd.

12. On June 1, 2006, Defendant Castillo saw Plaintiff, told him that he would be given Ablation very soon based on the result of the blood test, and advised Plaintiff to stop taking his medication so another test could be performed. A blood test was performed on July 5th, and a thyroid stimulation hormone test (TSH) was performed on July 17th.

13. On August 16, 2006, Plaintiff saw Defendant Castillo, complained about his symptoms, and pleaded to start receiving Ablation.

14. On August 24, 2006, Defendant Vilaysine saw Plaintiff, placed Plaintiff back on medication, and ordered another TSH test.

15. On September 20, 2006, the endocrinologist saw Plaintiff, explained that Plaintiff need to be started on Ablation, and stated that repeated consultations were unnecessary because hyperthyroidism had already been diagnosed.

16. On September 26, 2006, Plaintiff saw Defendant Vilaysine to discuss scheduling Plaintiff for Ablation. On October 25th, Defendant Vilaysine informed Plaintiff that he would be seen by an endocrinologist soon for a followup. On November 15th, Defendant Vilaysine told Plaintiff that he needed another TSH test and a cardiac exam. On December 6th, Defendant Vilaysine explained that the TSH test results were high and that Plaintiff was at risk for a heart attack. Defendant Vilaysine ordered more blood tests.

17. On February 2, 2007, Defendant Vilaysine examined Plaintiff, told Plaintiff that he was scheduled to see an endocrinologist,

and that Plaintiff was suffering from anemia. Defendant Vilaysine ordered more blood tests.

18. On February 14th, Plaintiff saw the endocrinologist, who stated that he was very disappointed that prison medical staff had not given Plaintiff Ablation and stressed that it was very important for Plaintiff to have the treatment. The endocrinologist recommended that Plaintiff at least restart the thyroid medication.

19. On March 16th, Defendant Vilaysine saw Plaintiff and told Plaintiff that he would see the endocrinologist again soon.

20. On March 25, 2007, after complaining of constipation, confusion, and pain, Plaintiff was seen by Defendant Diep, who opined that the constipation was caused by Plaintiff's hyperthyroidism and requested that Plaintiff see an endocrinologist.

21. On April 12, 2007, Plaintiff saw Defendant Doehring, who reviewed Plaintiff's medical file and determined that he needed Ablation, ordered Plaintiff's test results, and prescribed a medication for Plaintiff's heart palpitations.

22. On July 22, 2007, Plaintiff was having heart palpitations, was diagnosed with coronary ischemic arrhythmia, and received nitroglycerine while en route to a medical center. At the medical center, the doctor explained that Plaintiff was suffering from Bradycardia "as a result of the hyperthyroid condition that he had been left in for years." The doctor stated that Plaintiff should receive Ablation as soon as possible, the thyroid medication should be discontinued, and the heart palpitation medication probably caused damage to Plaintiff's heart.

23. On July 31, 2007, Plaintiff saw Defendant Doehring and explained that his symptoms were ongoing and that he had repeatedly requested and been prescribed Ablation. Defendant Doehring stated that she was doing all she could.

24. On September 27, 2007, Plaintiff was seen at a radiology medical group and was given a thyroid uptake scan. It was again concluded that Plaintiff should receive Ablation as soon as possible.

25. On October 3, 2007, Defendant Doering stated that Plaintiff would be getting Ablation.

26. On November 8, 2007, twenty-three months after Defendant Kushner first informed Plaintiff that he needed Ablation, Plaintiff received Ablation.

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs as evidenced by their delays, changed diagnoses, and refusal to provide Plaintiff with prescribed medications and treatments. He also alleges that the California Department of

1  Corrections and Rehabilitation (CDCR) "has a policy where a Doctor will personally
2  diagnose a patient, prescribe medication and treatment, and a CDCR committee will override
3  the diagnosis and recommendation for medication and do so without any input or
4  communication with an inmate or the doctor that originally set forth a plan of treatment."
5  Plaintiff states that he is unsure of the true names of the members of the medical review
6  committee who "arbitrarily den[y] prescribed treatments(s)," but he has named them as a Doe
7  Defendants and will name them "once their names become known in this litigation."

8  Plaintiff seeks monetary damages and injunctive relief.

9  **IV.    Individually Named Defendants**

10  Not every claim by a prisoner that he has received inadequate medical treatment states
11  a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show
12  that the defendants acted with "deliberate indifference to serious medical needs." Jett v.
13  Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104
14  (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure
15  to treat the condition could result in further significant injury or the unnecessary and wanton
16  infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d
17  at 1096 (quotations omitted).

18  To act with deliberate indifference, a prison official must both know of and disregard
19  an excessive risk to inmate health; the official must both be aware of facts from which the
20  inference could be drawn that a substantial risk of serious harm exists and he must also draw
21  the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the
22  medical context may be shown by a purposeful act or failure to respond to a prisoner's pain
23  or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096.
24  Deliberate indifference may also be shown when a prison official intentionally denies, delays,
25  or interferes with medical treatment or by the way prison doctors respond to the prisoner's
26  medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

27  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
28  1060 (9th Cir. 2004). Deliberate indifference is a higher standard than negligence or lack of

1  ordinary due care for the prisoner's safety.  Farmer, 511 U.S. at 835.  Medical malpractice
2  or negligence is insufficient to establish an Eighth Amendment violation.  Toguchi, 391 F.3d
3  at 1060.  Thus, mere negligence in diagnosing or treating a condition does not violate the
4  Eighth Amendment.  Id. at 1057.  Also, an inadvertent failure to provide adequate medical
5  care alone does not rise to the Eighth Amendment level.  Jett, 429 F.3d at 1096.  A mere
6  delay in medical care, without more, is insufficient to state a claim against prison officials
7  for deliberate indifference.  See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d
8  404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a
9  level of "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105-06.

10  Plaintiff has failed to state a claim against the individual Defendants because their
11 individual conduct does not rise to the level of deliberate indifference to Plaintiff's serious
12 medical needs.  The Court, therefore, will dismiss without prejudice Defendants Ortiz,
13 Salazar, Kushner, Elmer, Castillo,Vilaysane, Diep, and Doehring.

14 **V.    Doe Defendants**

15  Liberally construed, Plaintiff has stated a claim against the members of the medical
16 review committee who Plaintiff contends "arbitrarily den[y] prescribed treatment(s)
17 prescribed by doctors" or against the individual at the CDCR who allegedly created or
18 implemented a policy of permitting the committee to arbitrarily deny prescribed treatments.
19 However, Plaintiff has only designated these Defendants as Does.

20  Generally, the use of anonymous type appellations to identify defendants is not
21 favored.  Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include
22 the names of the parties in the action.  As a practical matter, it is impossible in most instances
23 for the United States Marshal or his designee to serve a summons and complaint on an
24 anonymous defendant.

25  However, the Court will not dismiss the First Amended Complaint at this time.  See
26 Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (where identity of alleged
27 defendants is unknown prior to filing of complaint, plaintiff should be given an opportunity
28 through discovery to identify the unknown defendants, unless it is clear that discovery would

1  not uncover the identities or that the complaint would be dismissed on other grounds).  The
2  Court will give Plaintiff 30 days to respond to this Order in a written pleading entitled
3  "Response."  Plaintiff's Response must include either (1) the name of at least one member
4  of the medical review committee or the individual who implemented the CDCR policy **or**
5  (2) an explanation of what Plaintiff has done to try to learn their names, a description of what
6  discovery he would undertake to learn their names, and the identity of at least one person
7  who could be served with discovery.  If Plaintiff fails to timely file his Response, this case
8  will be dismissed without prejudice and without further notice.

**VI.   Warnings**

**A.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**B.   Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.   Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   The Clerk of Court must modify the docket entry for Document #10 to reflect that it is a "Demand for Jury Trial."

(2)   Defendants Ortiz, Salazar, Kushner, Elmer, Castillo, Vilaysane, Diep, and Doehring are **dismissed** without prejudice.

1     (3)     Within **30 days** of the date of filing of this Order, Plaintiff must file a
2 **Response** to this Order that includes either (1) the name of at least one member of the
3 medical review committee or the individual who implemented the CDCR policy **or** (2) an
4 explanation of what Plaintiff has done to try to learn their names, a description of what
5 discovery he would undertake to learn their names, and the identity of at least one person
6 who could be served with discovery.

     (4)     **If Plaintiff fails to file a Response within 30 days, the Clerk of Court must, without further notice to Plaintiff, enter a judgment of dismissal of this action without prejudice.  See Fed. R. Civ. P. 41(b).**

DATED this 8th day of October, 2009.

_____<br>
David C. Bury<br>
United States District Judge